**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

RUSSELL CHARLES TAYLOR, )
)
Petitioner, )
)
v. ) Case No. 1:16-cv-03515-TWP-MPB
)
UNITED STATES OF AMERICA, )
)
Respondent. )

**ENTRY DENYING MOTION FOR DEFAULT JUDGMENT,**
**DENYING IN PART MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255,**
**AND DIRECTING FURTHER PROCEEDINGS**

This matter is before the Court for adjudication of Petitioner Russell Taylor's ("Taylor")

Motion for Default Judgment (Dkt. 20) and his Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence ("§ 2255") (Dkt. 1). For the reasons set forth below, Taylor's motion

for default judgment is **denied**, and his § 2255 motion is **denied in part**. However, further

proceedings are necessary to resolve one issue raised in the § 2255 motion.

## I. STANDARD OF REVIEW

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal

prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343

(1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon

the ground that the sentence was imposed in violation of the Constitution or laws of the United

States, or that the court was without jurisdiction to impose such sentence, or that the sentence was

in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28

U.S.C. § 2255(a). The scope of relief available under § 2255 is narrow, limited to "an error of law

that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in

a complete miscarriage of justice." *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (internal citations omitted).

## II. <u>FACTUAL BACKGROUND</u>

Taylor pled guilty on December 10, 2015, to twelve counts of sexual exploitation of children in violation of 18 U.S.C. § 2251(a) and one count of receipt and distribution (and conspiracy to receive and distribute) child pornography in violation of 18 U.S.C. § 2252(a)(2). Crim. Dkt. 46.[1] Each of Taylor's exploitation charges carried a maximum sentence of 30 years' imprisonment, and the pornography charge carried a maximum sentence of 20 years. *See* 18 U.S.C. § 2251(e); 18 U.S.C. § 2252(b)(1). Taylor pled guilty pursuant to an agreement with the United States of America (the "Government"). His plea agreement was pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), therefore, Taylor's sentence was within the discretion of the Court. Crim. Dkt. 28 at 4. Taylor was placed under oath and examined concerning his Petition to Enter a Plea of Guilty. The Court determined that Taylor was competent to enter a plea of guilty and that his plea was made knowingly and voluntarily. At the end of the hearing, the plea of guilty and terms of the agreement were accepted, and Taylor was adjudged guilty.

The Court proceeded to impose a sentence. As part of the agreement, the Government would not recommend an aggregate sentence longer than 35 years of imprisonment. Crim. Dkt. 28 at 6, ¶ 9(A). Taylor agreed not to ask for a sentence below 15 years of imprisonment. *Id*. at 6, ¶ 9(C). The Government also agreed that Taylor would qualify for reductions in his offense level under the United States Sentencing Guidelines based on his acceptance of responsibility and substantial assistance to the Government. *Id.* at 6 ¶43, *Id*. at 22 ¶55. The Court inquired as to whether Taylor and his counsel had reviewed the Presentence Investigation Report ("PSR") and

---

[1] References to "Crim. Dkt. *x*" refer to documents filed in Taylor's criminal case, No. 1:15-cr-00165-TWP-DKL-1. References to "Dkt. *y*" refer to documents filed in this case, No. 1:16-cv-03515-TWP-MPB.

counsel responded affirmatively. Crim. Dkt. 49 at 43. The PSR contained a detailed explanation of the Offense Conduct. Crim. Dkt. 37 at 4-7, ¶¶ 6-16. The Court then addressed Taylor's objections and corrections to the PSR and accepted Taylor's objections and corrections except for Objection #2 to paragraph 11(b), which was taken under advisement. Dkt.49 at 44-47. During pronouncement of the sentence, the Court overruled Objection #2, that Taylor did not have sexual contact with child victims 1 and 2, based on evidence presented during the hearing. *Id*. at 165. Taylor was sentenced to 324 months' imprisonment on each of Counts 1-12 (Sexual Exploitation of a Child) and to 240 months on Count 13 (Distribution and Receipt of Child Pornography and Conspiracy to Distribute and Receive Child Pornography), each to be executed concurrently. Crim. Dkt. 46 at 3.

### III. ANALYSIS

Taylor presents two arguments in his § 2255 motion for why his conviction and sentence are unlawful. Both arguments are rooted in claims that his plea is invalid because he entered it without the benefit of effective assistance by his trial counsel, Bradley Banks ("Banks"), as guaranteed by the Sixth Amendment[2]. First, Taylor argues that Banks was ineffective for failing to file a motion to suppress evidence obtained in two searches of his residence. Second, he argues that Banks failed to advise him that there was no evidentiary or factual basis to support three of the exploitation charges. Before addressing the factual details relevant to each argument, the Court must first address Taylor's Motion for Default Judgment.

### A. Motion for Default Judgment

Taylor seeks default judgment pursuant to Federal Rule of Civil Procedure 55 based on the Government's delays in responding to the issues presented in the § 2255 motion. (Dkt. 20.) A

---

[2] Taylor was also represented by attorneys Adam B. Brower and Eric J. Massey; however, his ineffective assistance of counsel claims appear to concern only Banks.

default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court. Fed. R. Civ. P. 55(d). Although the court has authority to enter a default judgment against the United States, "a default judgment, without full inquiry into the merits, is especially rare when entered against a custodian in a habeas corpus proceeding". *Ruiz v. Caddy*, 660 F.2d 337, 340 (7th Cir. 1981).

Taylor filed his § 2255 motion on December 29, 2016. The Government's Response was due on February 17, 2017; however, the Government sought and obtained two extensions. When they filed their Response on May 9, 2017, the Government woefully failed to address the merits of Taylor's motion and asserted only that his claims were barred by waiver or procedural default— a position that was unsupportable based on settled law in the Seventh Circuit. *See* Dkt. 15. Taylor filed a timely Reply to the Government's Response.

Due to the complexity of Taylor's claims, the Court found that briefing on the merits would be beneficial and on its own motion, granted the Government 60 days to supplement its Response. *Id.* After requesting an additional extension, the Government filed a supplemental Response to Court's Entry on June 13, 2018. (Dkt. 22.) Again, Taylor timely replied on July 13, 2018 and the merits of this matter were fully briefed—more than 18 months into the action.

Taylor's argument for default judgment is simple: The Government's delays in briefing the merits of the § 2255 motion were extensive and unjustified. This argument is compelling given that the Government's initial response was both incomplete and contradicted by settled law. Nevertheless, default judgment is inappropriate in this case because the evidence currently available does not establish a claim or right to satisfy the Court that Taylor is entitled to all the relief he seeks through a § 2255 motion.

Although default judgment is not warranted based on the merits of Taylor's case, the Court finds it necessary to address two aspects of the Government's Response to the motion for default judgment. The Government argues that default "would be especially inequitable" in this case because Taylor "pleaded guilty to repulsive child pornography counts . . . and is obviously guilty . . . ." (Dkt. 23 at 4.) Further, the Government asserts that Taylor's motion for default judgment "requests an extreme sanction in a non-extreme case . . . ." *Id.* at 5. These assertions signal a disregard for the essence of § 2255 litigation. Of course, every § 2255 movant has either pled guilty to a crime or been convicted of one by a jury. Section 2255 allows for the possibility that a movant has pled guilty or been convicted under circumstances that our legal system does not permit. That the movant has pled guilty or been convicted does not relieve the Government of its responsibility to seriously and timely address that possibility.

Whether the Government's delays in this proceeding present an "extreme case" is perhaps a subjective inquiry. But the Government's approach to this case must not be viewed as acceptable. Taylor's motion asserts that he should not be in prison. The Government naturally disagrees, but the seriousness of the claim cannot be questioned. The suggestion that Taylor's guilty plea removes any consequence or urgency from his § 2255 motion is inappropriate. This implication has no place in § 2255 litigation—especially where, as here, it has no bearing on the issues before the Court. Any delay in resolving a meritorious claim is obviously harmful, and Taylor's motion includes arguments that at least merit further development. Meanwhile, as the Court explains further in Part III(D)(4) below, the Government still has not thoroughly addressed all the critical issues—even after being granted a second opportunity to do so.

To be clear, the deficiency the Court wishes to confront is not strictly the amount of time that elapsed before Taylor's motion was fully briefed. The Court recognizes the realities of

litigation often require deadlines to be extended. And, obviously, the Court has granted the Government multiple extensions in this case. Rather, the Court is disturbed and disappointed by the lack of seriousness and attention the Government has applied to this action. Although default judgment is not warranted in this case, the Government should not view the Court's denial of Taylor's motion for default judgment as a license to approach future § 2255 motions similarly.

For these reasons, Taylor's motion for default judgment, Dkt. [20], is **DENIED**.

## B.    <u>Right to Effective Assistance of Counsel</u>

A petitioner claiming ineffective assistance of counsel bears the burden of showing that (1) trial counsel's performance fell below objective standards for reasonably effective representation, and (2) this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011). To satisfy the first prong of the *Strickland* test, the petitioner must direct the court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The court must then consider whether, in light of all of the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Id*. To determine whether counsel satisfied that standard, the Court must "first determine whether counsel's representation 'fell below an objective standard of reasonableness.'" *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 688). Then the Court must "ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Padilla,* 559 U.S. at 366 (quoting *Strickland*, 466 U.S. at 694).

The Supreme Court framed the determinative question as "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. "It is essential to evaluate the entire

course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks." *Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009). Nevertheless, a "single error may suffice if that error is sufficiently egregious and prejudicial." *Id.* (internal citations and quotation marks omitted).

## C.   Failure to Seek to Suppress Evidence

Taylor argues that the evidence that would have been used to convict him at trial was obtained in violation of the Fourth Amendment and that his trial attorney rendered constitutionally ineffective assistance when he declined to move to suppress that evidence.

Taylor became the subject of an investigation by Indiana State Police ("ISP") in September 2014 regarding possible bestiality and child pornography. According to a search warrant affidavit by ISP Detective Kevin Getz ("Detective Getz"), a woman identified as Jane Doe approached Master Trooper Patrick Etter and stated that Taylor "had offered to send her images of young girls." Dkt. 1-2 at 14, ¶ 21. On October 3, 2014, Jane Doe met with Detective Getz and consented to a forensic extraction of data from her cell phone. *Id.* at 15, ¶ 23. Detective Getz's affidavit indicates that Jane Doe maintained a friendship with Taylor and his then wife, Angela Taylor (also referred to as Angela-Russ), and that they sometimes engaged in sexual activities together. *See id.* at 15-19, ¶¶ 23–28.

Detective Getz's affidavit reproduces text messages he says were extracted from Jane Doe's cell phone and that are attributed to Jane Doe, "Angela-Russ," and "Russ Taylor." *Id.* at 16-19, ¶ 28. The Court understands this to mean that the messages were sent to and received from phone numbers assigned the identifiers "Angela-Russ" and "Russ Taylor" in Jane Doe's cell phone. These messages include graphic references to sexual activities involving Taylor, Angela

Taylor, Jane Doe, and a horse. *Id.* They also include an exchange in which Jane Doe seeks, and the number attributed to Taylor offers to provide, apparently explicit images of young girls:

| | |
|---|---|
| Jane Doe: | Any more pics I can masturbate over? |
| Taylor: | Lol. Tell me what you want to see. I got it all. |
| Jane Doe: | Everything. |
| Taylor: | Pics or video? |
| Jane Doe: | Both? |
| Jane Doe: | I want that |
| Taylor: | You get them |
| Jane Doe: | Yeah! Can I have more? |
| Jane Doe: | I love them! So hot |
| Taylor: | Yes What. Type? Her with dogs, orgy, s and m, young girls, etc |
| Jane Doe: | Young orgy |
| Jane Doe: | Any of you and her? |
| Taylor: | Yes |
| Taylor: | How young are you ok with |
| Jane Doe: | Legal age |
| Taylor: | Ok |
| Taylor: | I wanted to ask lol. Keep in mind we do travel to Thailand on occasion :-) |

*Id.* Detective Getz attested that, through his training and experience, he knew that "persons who have a sexual interest in children have been known to travel to Thailand because it is a hotspot for child sex tourism." *Id.* at ¶ 25.

On April 23, 2015, Detective Getz obtained a warrant to search Taylor's home based on this information. (Dkt. 1-1.) The warrant authorized the search and seizure of computers and

electronic storage devices.  *Id.*  The warrant stated that these items would "be seized and then later searched for evidence relating to the possession and / or distribution of child pornography."  *Id.* at 3.  The warrant also authorized the search and seizure of:

> All copies and/or excerpts from visual images of persons under the age of eighteen (18) years old engaged in sexual acts and/or poses, that is believed to be child pornography in violation of Indiana statute, and any evidence of possession and/or dissemination of child pornography, contained on the electronic storage media seized as a result of this search warrant.

*Id.* at 4.

The search warrant contains three references to child pornography that are accompanied by the handwritten notations "and bestiality" or "and/or bestiality."  *Id.* at 3–4.  One of the sections describing the electronic storage devices to be searched is also accompanied by the handwritten notation "cell phones."  *Id.* at 3.  All handwritten notations are accompanied by the initials "KLG," which the Court understands to belong to Detective Getz.  It is not clear whether these notations were written before or after the judge issued the search warrant.

Law enforcement officers served the search warrant on April 29, 2015. A second search warrant affidavit states as follows:

> During a forensic search of multiple media devices, detectives observed multiple video files of minor children in a bedroom and bathroom. Many of these videos showed the exposed genitalia of the minor children. The children are believed to be the 16, and for 14 year old stepdaughters of Taylor and the 12 year old step son of Taylor. When these items were discovered, examiners stop [sic] the search in order to obtain an additional warrant.

Dkt. 22-1 at 22, ¶ 35.  A second warrant was also issued, authorizing a forensic search of items seized from the residence "for evidence of child exploitation/child pornography."  *Id.* at p. 2.

These searches revealed that Taylor had set up hidden cameras throughout his home.  Using these cameras, he collected images of children in various states of undress and engaged in various sexual activities. The images were collected without the children's knowledge.  The subjects of

these images included Taylor's sons, stepchildren, other relatives, and their friends.  At the time they were recorded, these children ranged in age from under ten years old to sixteen years old.  Taylor shared some of these videos and images with his employer, Jared Fogle.  *See* Crim Dkt. 37 at 5-7, ¶¶ 10–16.

## 1.    The Fourth Amendment

The Fourth Amendment protects "against unreasonable searches and seizures."  U.S. Const. Amend. IV.  When law enforcement officers seek to search a person's residence, the search and seizure of any evidence found there will generally be found unreasonable unless authorized by a properly issued warrant.  *See Kyllo v. United States*, 533 U.S. at 27, 31 (2001) ("With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no.").

The Fourth Amendment holds that a judge may issue a warrant only "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  "Articulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible.  They are commonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (internal quotations omitted).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The issuing judge's decision is afforded "great deference" when reviewed on a motion to suppress and will be deemed proper so long as there is

"substantial evidence" in the record to support it. *United States v. Leonard*, 884 F.3d 730, 733 (7th Cir. 2018).

### 2.    <u>Probable Cause Analysis</u>

Taylor's search warrant argument is straightforward. By his reading, the first search warrant only authorized officers to search for evidence of child pornography. However, Detective Getz's affidavit did not establish probable cause to suspect that any evidence of child pornography would be found at his residence. At best, it established probable cause to suspect that Taylor's residence housed evidence of bestiality, and the search warrant did not authorize officers to search for evidence of bestiality. According to Taylor, the portions of the warrant describing the evidence to be sought did not reference bestiality except by Detective Getz's handwritten insertions, and it is unknown whether those notations were added before the judge issued the warrant. Taylor argues because there was no probable cause to suspect that his home would contain the evidence described in the warrant, the search that followed was unlawful, and all the evidence recovered from his home would have been inadmissible at his trial. As a result, he asserts, Banks' failure to move to suppress the evidence rendered his representation constitutionally ineffective.

The Court is not persuaded. Taylor's argument ignores both the contents of Detective Getz's affidavit and the standard for establishing probable cause. The affidavit reproduces a text exchange in which Jane Doe asked Taylor for pictures she could "masturbate over." Dkt. 1-2 at 16-18, ¶ 28. He responded by stating that he had images of orgies and "young girls." *Id.* Jane Doe asked for pictures of a "[y]oung orgy." *Id.* Taylor responded by asking how young Jane Doe was comfortable with and even noted his travels to Thailand—which Detective Getz testified that he knew to be a "a hotspot for child sex tourism." *Id.* at ¶¶ 25, 28.

Based on this evidence, Detective Getz testified to the judge that he had "probable cause to believe that" Taylor had violated "Indiana Code 35-42-4-4 which, among other things, make it a state crime for any person to knowingly possess child pornography," and that evidence of the violation would be found at his home. *Id.* at 20, ¶ 34. Viewed through the lens of common sense, *see Ornelas*, 517 U.S. at 695, the exchange set forth above constitutes "substantial evidence" to support the judge's finding of probable cause, *see Leonard*, 884 F.3d at 733.

Taylor raises several specific arguments why the evidence against him would have been susceptible to suppression, which the Court addresses below. These arguments warrant consideration but fall short of undermining the judge's finding of probable cause.

### a.     Jane Doe's "Legal Age" Clarification

Taylor argues that Jane Doe's clarification that she was seeking only images of girls of "legal age," (*see* dkt. 1-2 at ¶ 28), eliminates any reason to suspect that Taylor possessed child pornography. But the question that invited that clarification supports a different conclusion. In response to Taylor's representation that he could provide images of orgies and "young girls," Jane Doe requested images of young girls engaged in an orgy. *Id.* Taylor responded by asking, "How young are you ok with?" *Id.* It is reasonable to interpret this question as suggesting that Taylor had pictures of "young girls" of varying ages and that he wished to clarify from what portion of that range Jane Doe was seeking pictures. After all, if Taylor only had pictures of girls of "legal age," why would he seek clarification as to what age Jane Doe was comfortable receiving? The fact that Jane Doe clarified her request may not say as much as the fact that Taylor *sought her clarification*. This is perhaps not the only inference to be drawn from Taylor's question, but it is a reasonable one based on substantial evidence, and the issuing judge's determination is entitled to "great deference" based on that evidence. *See Leonard*, 884 F.3d at 733.

### b.    Inclusion of Boilerplate Language

Taylor argues that Detective Getz's probable cause affidavit is "undermined by the improper inclusion of extensive boilerplate language about the habits of child pornography collectors and technology which Getz believes are relevant to Taylor." Dkt. 2 at 12.   But the inclusion of boilerplate language in an affidavit does not preclude a finding of probable cause.   The cases Taylor cites in support of his argument make clear that reliance on boilerplate language about tendencies and characteristics of child pornographers fails to create probable cause when it is not accompanied by evidence that the subject of the search displays those tendencies and characteristics.[3]   In this case, the affidavit included documentation that Taylor offered to send Jane Doe images of young girls engaged in an orgy.   This is substantial evidence of probable cause to believe that Taylor possessed child pornography regardless of whether the affidavit included boilerplate language about child pornographers generally.

### c.    Staleness

Taylor also argues that the finding of probable cause was undermined because Jane Doe's testimony was stale. Taylor correctly notes that "there must be some time limitation when assessing evidence for probable cause." Dkt. 2 at 19.   However, the Seventh Circuit's conception of that limitation does not undo the probable cause determination in this case.   In *United States v. Seiver*, the Seventh Circuit considered whether a warrant to search a computer was impermissibly based on evidence that he had uploaded child pornography seven months earlier.   692 F.3d 774, 775.   "'Staleness,'" the court noted, "is highly relevant to the legality of a search for a perishable

---

[3] *See United States v. Clark*, 668 F.3d 934, 939 (7th Cir. 2012) ("Boilerplate language about the tendencies of child pornography collectors supports probable cause for a search warrant when the affidavit also includes facts that suggest the target of the search has the characteristics of a prototypical child pornography collector.") (internal quotations omitted); *United States v. Pappas*, 592 F.3d 799, 804 (7th Cir. 2010) ("[W]here evidence indicates that an individual has uploaded or possessed multiple pieces of child pornography, there is enough of a connection to the 'collector' profile to justify including the child pornography collector boilerplate in a search warrant affidavit.").

or consumable object, like cocaine, but rarely relevant when it is a computer file." *Id.* at 777. The court explained that the nature of a computer's storage protocols makes evidence of child pornography likely to remain on a computer long after a user deletes the relevant files and that this may make evidence that a person possessed such files indicative of probable cause more than seven months after it is discovered:

> No doubt after a *very* long time, the likelihood that the defendant still has the computer, and if he does that the file hasn't been overwritten, or if he's sold it that the current owner can be identified, drops to a level at which probable cause to search the suspect's home for the computer can no longer be established. *But seven months is too short a period to reduce the probability that a computer search will be fruitful to a level at which probable cause has evaporated.*

*Id.* (emphasis added).

The warrant authorizing the search of Taylor's home was issued on April 23, 2015—slightly less than seven months after Taylor and Jane Doe exchanged the text messages described above (September 28, 2014) and Jane Doe met with law enforcement officers (October 3, 2014). *See* Dkt. 1-2. "Only in the exceptional case should a warrant issued to search a computer for child pornography be denied" based on staleness. *Seiver*, 692 F.3d at 778. Taylor has neither identified what makes his case exceptional nor made any effort to distinguish his case from the nearly identical factual circumstances of *Seiver*. Therefore, his staleness argument does not negate the issuing judge's finding of probable cause.

### d.    Efforts to Accurately Identify Taylor

Perhaps the most compelling of Taylor's probable cause arguments is that no evidence but Jane Doe's word identified Taylor as the sender of the messages described above. The messages Jane Doe showed Detective Getz were sent from senders identified in her cell phone as "Angela-Russ" and "Russ Taylor." *See* Dkt. 1-2 at 17, ¶ 28. But the affidavit does not indicate that officers

ever contacted those phone numbers or obtained any records to confirm that they were associated with phones possessed by Russell Taylor or Angela Taylor.

Obviously, such evidence would make the case against Taylor more complete. But the issuing judge's responsibility was not to determine beyond a reasonable doubt or even by a preponderance of the evidence whether Taylor sent those messages. Rather, the Fourth Amendment called on him to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there was a fair probability that contraband or evidence of" child pornography would be found in Taylor's home. *Gates*, 462 U.S. at 238.

The text messages presented in Detective Getz's affidavit create the impression that Jane Doe and the senders identified as Angela-Russ and Russ Taylor were, at minimum, friends who joked and interacted with Jane Doe socially. The messages they exchanged would allow a reasonable person to infer that they also engaged in sexually intimate activities together. Even the testimony and arguments submitted by Taylor support that inference. *See, e.g.*, Dkt. 2 at 11 ("These text messages demonstrate that Taylor and Jane Doe were clearly engaged in consensual texting."); Dkt. 5-1 at ¶ 5 ("Jane Doe, Angela Taylor, and I joked about sexual acts involving animals on more than one occasion."); *id.* at ¶ 8 ("I also sent [Jane Doe] multiple images by text message depicting [Jane Doe] and my wife, Angela Taylor, fully nude."); *id.* at ¶ 36 ("[Jane Doe], Angela Taylor, and I engaged in group sexual acts together prior to September 2014."). This by no means would have proved to the issuing judge that Taylor actually sent the messages attributed to him. However, substantial evidence raised a fair probability that Taylor sent those messages and that evidence of child pornography would be found at his home.

### e.    The Ron Santa Vendetta Conspiracy Theory

Finally, Taylor argues that his investigation and prosecution were products of a conspiracy initiated by former Indianapolis police officer Ron Santa ("Santa").  Taylor explains that the person identified as Jane Doe was married to Santa.  Taylor recounts an incident in which Jane Doe invited Taylor to her home.  When he arrived, Santa was lying in wait and threatened him at gunpoint.  Taylor suspects that a personal vendetta—the basis of which is not clear—motivated Santa to coerce Jane Doe into requesting sexually explicit materials from him by text message so he would be prosecuted.

There is no reference to Jane Doe's identity or to Santa in the materials before the issuing judge, so this theory does not undermine the issuing judge's finding of probable cause.  Supposing that Detective Getz was connected to Santa's vendetta and that he lied in his warrant affidavit to advance the conspiracy, the evidence recovered from the resulting search might have been vulnerable to a motion to suppress.  *See Franks v. Delaware*, 438 U.S. 154 (1978) (applying exclusionary rule to evidence obtained from a search authorized by a warrant based on deliberately or recklessly false statements).  Importantly, though, Taylor has not given any indication that he informed Banks of Santa's potential connection to the case.  (*See* Crim Dkt. 5-1.)  The bottom-line questions in this case are whether Banks unreasonably declined to pursue a motion to suppress and whether Taylor was prejudiced by that decision.  Absent an indication that Banks had information of Santa's involvement, the Court cannot find that he unreasonably declined to seek suppression on that theory.

### 3.    Ineffective Assistance Analysis

The discussion above illustrates the steep uphill climb Taylor would have faced in seeking to suppress the evidence recovered from his home.  The judge's finding of probable cause and

decision to issue the warrant were entitled to "great deference" and would be deemed proper as long as the reviewing court found "substantial evidence" to support them. *Leonard*, 884 F.3d at 733. Evidence supporting the issuing judge's determination included:

- Detective Getz's testimony regarding Jane Doe's relationship with Taylor and Angela Taylor;

- Jane Doe's text message asking Taylor for pictures she could "masturbate over;"

- Taylor's representation that he could provide images of "young girls" engaged in an orgy;

- Taylor's subsequent effort to clarify the ages of the girls whose images Jane Doe was seeking;

- Taylor's reference to his travels to Thailand; and

- Detective Getz's testimony regarding child sex tourism in Thailand.

Dkt. 1-2 at 16-17, ¶¶ 25, 28.

The evidence presented to the issuing judge was not flawless, but it was substantial. A reviewing judge would not have had to look hard to find a fair probability that evidence of child pornography would be found in Taylor's home. *See Gates*, 462 U.S. at 238.

Taylor's challenge is even bleaker in the context of his § 2255 motion. The basis for his motion is that he was denied his Sixth Amendment right to effective assistance by an attorney. To win, he cannot just show that he had decent arguments for suppressing the evidence. He must show that (1) his attorney's decision not to pursue suppression was objectively unreasonable, and (2) there is a reasonable probability that, had his attorney moved to suppress the evidence, the result of his prosecution would have been different. *Strickland*, 466 U.S. at 688–94.

### a. *Strickland* Performance

The Seventh Circuit has made clear that "[c]ounsel cannot be expected to request a *Franks* hearing when the evidence is insufficient to warrant such a hearing." *United States v. McDonald*,

723 F.2d 1288, 1297 (7th Cir. 1983).  Applying the same principle to motions to suppress more broadly, the Seventh Circuit has specifically recognized that counsel's decision to forego a weak motion to suppress and instead negotiate a favorable plea bargain is not unreasonable.  *See Perez v. United States*, 286 F. App'x 328, 332 (7th Cir. 2008) (finding that the petitioner provided "no evidence that the motion to suppress would have been meritorious" and that, in any event counsel "made the *reasonable strategic decision* not to pursue a motion to suppress—regardless of its underlying merit—because doing so would have undermined the plea agreement being negotiated at that time") (emphasis added).

The extensive evidence and the legal framework discussed above would have justified Banks in concluding that a motion to suppress was likely to fail.  As a matter of law, the Court must find that it was reasonable for him to bypass that motion and instead seek a favorable plea agreement.

Taylor correctly notes that there is no evidence in the record demonstrating that Banks' failure to file a suppression motion was the product of a reasoned decision.  (Dkt. 26 at 3–4.) Under the controlling standard of review, though, this makes no difference.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  "[T]hat is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation omitted).

The only evidence Taylor offers to combat *Strickland*'s presumption of reasonableness is his testimony that, when asked to file a suppression motion, Banks answered "that he had 'asked around' and that there was no chance that the judge handling [the] case would grant a motion to suppress because the judge would always side with the government."  Dkt. 5-1 at 5-6, ¶ 24.  Banks

added that "filing a motion to suppress would increase the prison sentence that" Taylor "would receive." *Id.* This statement does not overcome *Strickland*'s presumption that Banks' course of action was reasonable. It might be read as indicating that Banks never seriously considered pursuing a suppression motion based on the reviewing judge's reputation. It can just as easily be read, however, to support the inference that Banks prudently determined that a motion to suppress was not Taylor's best option. In other words, the statement Taylor attributes to Banks could just as well be construed as indicating that he consulted with others about the *merits* of a suppression motion based on the evidence presented to the issuing judge; determined that the merits were so slim that he could not realistically expect a judge to grant it; and advised Taylor that he was likely to achieve a more favorable sentence by quickly negotiating a plea agreement than by losing a motion to suppress. Given the evidence and deferential standard of review Taylor would have faced, this argument is not sufficient to undermine the strong presumption that Banks made a sound strategic decision to forego a suppression motion.

### b. *Strickland* **Prejudice**

Even if Taylor could establish that Banks performed unreasonably in failing to file a motion to suppress, he cannot establish that he was prejudiced by that performance. "When the claim of ineffective assistance is based on counsel's failure to present a motion to suppress," the Seventh Circuit has "required that a defendant prove the motion was meritorious." *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). The Court has already discussed the merits of Taylor's hypothetical suppression motion. There would have been no basis upon which to grant such a motion. As such, the Court cannot find that Taylor was prejudiced by Banks' failure to file the motion.

In sum, "the motion and the files and records of the case conclusively show that" Taylor "is entitled to no relief" on his Fourth Amendment argument. 28 U.S.C. § 2255(b). No evidentiary hearing is warranted on this argument, and his motion is **DENIED** insofar as it seeks to vacate his convictions based on Banks' failure to file a motion to suppress.

### D.    Failure to Advise of Defenses to Counts 9 through 11

Taylor next argues that Banks failed to advise him that the conduct of which he was accused in counts 9 through 11 did not actually violate 18 U.S.C. § 2251(a). This, he says, led him to plead guilty to counts 9 through 11 even though the evidence against him and the factual basis for the plea failed to satisfy the elements of these offenses.

#### 1.    Counts 9 through 11

Taylor was first charged on May 4, 2015, in a criminal Complaint alleging seven counts of producing child pornography in violation of 18 U.S.C. 2251(a) and an eighth count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Crim. Dkt. 1. On September 1, 2015, his charges were amended in a criminal Information[4] alleging twelve counts of sexual exploitation of children in violation of 18 U.S.C. § 2251(a) and one count of receipt and distribution (and conspiracy to receive and distribute) child pornography in violation of 18 U.S.C. § 2252(a)(2). Crim. Dkt. 24. That day, Taylor agreed to plead guilty to all thirteen counts. Crim. Dkt. 28. The Information did not describe each of the twelve exploitation counts individually. Rather, it addressed counts 1 through 12 collectively as follows:

> On multiple separate occasions between in or about March 2011 and on or about January 30, 2015, and within the Southern District of Indiana and elsewhere, the Defendant, RUSSELL TAYLOR, did employ, use, persuade, induce, entice, or coerce a minor, that being, Child 1 through Child 12, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . .

---

[4] Taylor waived his right to indictment by a grand jury as part of his plea agreement. Dkt. 28. at ¶ 1.

Crim. Dkt. 24 at ¶ 24.  The Information did not identify any of the children, but described them as "minor girls and boys," some of whom were related to Taylor, and all of whom Taylor knew "through his family or personal associations."  *Id.* at ¶¶ 9, 14.  The Information also did not individually describe any of the acts underlying counts 9 through 11.  Instead, it described collectively that Taylor used and attempted to use the children to engage in sexually explicit conduct to producing video and image files, without their knowledge, that included "a lascivious exhibition of the genitals or pubic area" of the children.  *Id.* at ¶¶ 10–11.

## 2.      The Factual Basis for Taylor's Plea

The factual basis in Taylor's plea agreement was no more specific, again addressing all twelve exploitation counts together:

> On multiple occasions between in or about March 2011 and in or about April 2015, the Defendant used multiple hidden cameras in his residences to produce received visual depictions of numerous minors engaging in sexually explicit conduct. The Defendant knew that the minors depicted in these images or videos were under the age of 18 years. He also knew the identities of these minors through his association of them and his family.
>
> . . .
>
> None of the minors in the images or videos were aware that they were being filmed. Rather, the Defendant produced the images or videos using multiple hidden cameras set up in his residences and oriented to show them nude, changing clothes, or engaged in other activities.
>
> . . .
>
> All of the images and videos included a lascivious exhibition of the genitals or pubic area of the relevant minor, while some material also included other sexually explicit conduct depending upon the minor involved.

Crim. Dkt. 28 at ¶¶ 29, 31, 33.

Taylor entered his plea in a hearing held December 10, 2015.  Crim. Dkt. 49.  During the plea colloquy, Taylor agreed to, and the Court found, a factual basis for the plea derived from the above passages from the plea agreement.  *Id.* at 27:19–31:13.  Before the Court accepted Taylor's

plea, there was no individualized discussion of the conduct underlying any of the twelve exploitation counts.

After accepting Taylor's plea, and during pronouncement of his sentence, however, the Court addressed each exploitation count individually in explaining the basis for Taylor's sentence. This included the following discussion of counts 9 through 11:

> Count 9, with respect to child 9, this is also a very close relative of the defendant by marriage. This child was under 12 years old at the time of the offense, and was recorded changing clothes in the nude, in his bedroom, without knowledge or consent.

> Count 10 is child 10, and Count 11, child 11. These are the defendant's sons. Both were under the age of 12 at the time of the offense, both were recorded nude, changing clothes in their bedroom, without their knowledge or consent. The Court recognizes that the defendant didn't—there's no evidence that he shared this child pornography with Mr. Fogle, but he didn't destroy it or erase it either. He saved it and kept it and presumably used it for whatever deviant purpose.

Crim. Dkt. 49 at 167:9–21. These descriptions are consistent with the detailed descriptions of Taylor's conduct that appeared in his PSR:

> d) Child 9 (Count 9) is the defendant's stepson. He was under 12 years old at the time of the offense and was recorded changing clothes in his bedroom without his knowledge or consent.

> e) Child 10 (Count 10) and Child 11 (Count 11) are the defendant's sons. Both were under the age of 12 at the time of the instant offense, and both were recorded changing clothes in their bedrooms without their knowledge or consent.

Crim. Dkt. 37 at ¶¶ 11(d)–(e).

The Court imposed equal, concurrent sentences on all the exploitation counts. Nevertheless, in discussing the basis for Taylor's sentence, the Court raised at multiple points the fact that the victims included his children, stepchildren, and other children who resided in his home:

> Taylor alleges that Mr. Fogle requested that he produce the child pornography of children in the defendant's home. *And these were children that this defendant*

*should have loved and cared about.* Mr. Fogle didn't care about those children. *Those were your children.*

. . .

In their sentencing memorandum, defense counsel states that Taylor recognizes the seriousness of his offenses. He claims that the first video was inadvertent as he had cameras throughout his home attempting to identify thieves. However, the nature and circumstances of the offenses are very egregious. *Taylor chose to victimize his family members and those close to him. These children trusted him, and their parents trusted him by allowing those children to be in his home.*

. . .

None of these children were aware that they were being videotaped. The defendant, as I stated earlier, distributed and shared many of these videos with his employer and friend, Jared Fogle. The defendant says that he believes this conduct was mild compared to the abuse that he suffered as a child, but *what is particularly disturbing is that he preyed on those entrusted to his care.*

Crim. Dkt. 49 at 163:14–18; 164:4–12; 168:5–11 (emphases added).

### 3. Legal Definitions of "Sexually Explicit Conduct" and "Lascivious Exhibition"

Taylor's argument that Banks failed to advise him of his innocence centers on the legal definition of "sexually explicit conduct" in 18 U.S.C. § 2251(a), the offense to which he pled guilty in counts 9 through 11. Section 2251(a) makes it a crime to employ, use, persuade, induce, entice, or coerce a minor to engage in "sexually explicit conduct for the purpose of producing any visual depiction of such conduct." "Sexually explicit conduct is defined by 18 U.S.C. § 2256(2)(A) as (i) sexual intercourse, (ii) bestiality, (iii) masturbation, (iv) sadistic or masochistic abuse, or (v) lascivious exhibition of the genitals or pubic area of any person."

Neither the information, the plea agreement, nor any statement of the factual basis for Taylor's plea suggests that counts 9 through 11 concern sexually explicit conduct taking the form of sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse. Indeed, those materials describe Taylor as violating the law only by capturing lascivious exhibitions of children's genitals or pubic areas.

"Lascivious exhibition of the genitals or pubic area" is not further defined by statute. Like so many other statutory terms however, its definition has been refined by case law. "[M]ore than nudity is required to make an image lascivious; the focus of the image must be on the genitals or the image must be otherwise sexually suggestive." *United States v. Griesbach*, 540 F.3d 654, 656 (7th Cir. 2008). "Lascivious means 'tending to arouse sexual desire.'" *United States v. Miller*, 829 F.3d 519, 524 (7th Cir. 2016) (citing Webster's Third New Int'l Dictionary). To determine whether a nude image amounts to a "lascivious exhibition," "the finder of fact may look to the creator's intent in making" the images in question. *Id.* at 525.

### 4.      **Ineffective Assistance Analysis**

Taylor argues that the visual depictions described in counts 9 through 11 did not include lascivious exhibitions of the children's genitals or pubic areas and therefore did not include sexually explicit conduct within the meaning of § 2251(a). He asserts that Banks never informed him of the legal definitions of these terms or the possible defense they raised to counts 9 through 11. Dkt. 5-1 at ¶ 30. Finally, Taylor states that, had he known of this defense, he would not have pled guilty to counts 9 through 11. *Id.* at ¶ 35. As a result, Taylor argues that he pled guilty to these counts without effective assistance of counsel.

The Government has not responded meaningfully to any aspect of this argument. The Government does not dispute Taylor's argument that, under the applicable legal precedents, images showing boys changing their clothes, without more, do not violate § 2251(a). Indeed, the Government's response to Taylor's § 2251(a) argument includes only one citation to any law, and it, for reasons explained below, has no bearing on this issue. Likewise, the Government does not challenge the notion that Banks' failure to advise Taylor of a valid defense would have been objectively unreasonable or that Taylor would have been prejudiced by that failure.

Taylor's § 2251(a) argument requires further proceedings, the scope of which the Court will detail below. Case law provides a sound basis for Taylor's argument that depictions of boys changing clothes are not depictions of sexually explicit conduct unless they "focus . . . on the genitals" or are "otherwise sexually suggestive." *Griesbach*, 540 F.3d at 656. By failing to oppose this well-supported argument, the Government has waived its opportunity to do so as this case moves forward.[5] The evidence presently before the Court suggests that the depictions underlying counts 9 through 11 would not have met that definition, even by looking to Taylor's other acts of exploitation for evidence of his intent. *See Miller*, 829 F.3d at 525.[6]

If indeed the videos only show boys undressing, and if Banks failed to advise Taylor of this defense, then Taylor entered his plea without effective assistance of counsel. The Supreme Court has made clear that "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton v. Alabama*, 571 U.S. 263, 274 (2014). Banks' failure to recognize and advise Taylor that the conduct of which he was accused did not actually violate the law would be unreasonable under this standard. Additionally, there is more than a reasonable probability that, had Banks so advised Taylor, he would not have pled guilty to counts 9 through 11. In fact, Taylor could not have pled guilty to those charges: knowing that his

---

[5] The Seventh Circuit has repeatedly warned that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (internal quotations omitted).

[6] In fact, the evidence presently before the Court suggests that Taylor may not have intended for the depictions underlying counts 9–11 to arouse sexual desire. Counts 1 and 2 are predicated on videos of teenage girls masturbating or "sexting." Crim. Dkt. 37 at ¶¶ 11(a)–(b); Crim. Dkt. 49 at 164:21–165:20. And counts 3–8 and 12 are predicated on videos that feature children showering, bathing, or changing clothes in bathrooms or bedrooms where cameras were intentionally positioned to capture them in those activities. Crim. Dkt. 37 at ¶¶ 11(c), 11(f); Crim. Dkt. 49 at 165:21–167:8, 167:12–168:4. The images described in counts 9–11 do not depict masturbation, sexting, bathing, or showering. Moreover, there is no indication that they were captured by cameras positioned with the intent of filming them while engaged in any sexual conduct. Images that merely depict boys changing clothes in the ordinary course of their daily activities would be distinguishable from the images underlying the remaining exploitation counts.

conduct did not violate § 2251(a), Taylor could not have honestly admitted a factual basis to support the plea. More significantly, the Court could not have accepted the plea and entered judgment against Taylor.[7]

The Government makes much of Taylor's stipulation in his plea agreement and admissions both to the probation officer and to the Court that all the images described in the information included lascivious exhibitions of the children's genitals or pubic areas. *See* Crim. Dkt. 28 at ¶ 33; Crim. Dkt. 37 at ¶¶ 11, 21; Crim. Dkt. 49 at 29:17–20. It is correct, after all, that the statements a criminal defendant makes while pleading guilty in open court are generally presumed true. *See* Dkt. 22 at 31 (citing *United States v. Logan*, 244 F.3d at 553, 558 (7th Cir. 2001)). But the Government again focuses its argument on irrelevant facts and ignores the central issue. A plea entered without the effective assistance of counsel is not knowing or voluntary and therefore is not valid. *E.g.*, *Hurlow v. United States*, 726 F.3d 958, 967–68 (7th Cir. 2013) ("a plea . . . cannot be 'knowing and voluntary' if it resulted from ineffective assistance of counsel."). Whether the images underlying counts 9 through 11 include lascivious exhibitions of children's genitals or pubic areas is as much a question of law as it is a question of fact.

Taylor is not an attorney. He could not reasonably be expected to know the definition of "lascivious exhibition" as developed through case law. If his attorney did not advise him as to the term's meaning, his statements shed no light on whether his conduct amounted to the offense with which he was charged. "Sexually explicit conduct" and "lascivious exhibition" are terms defined by statute and case law—not by Taylor's statements. Although generally presumed true, a

---

[7] *See, e.g.*, *United States v. Muratovic*, 719 F.3d 809, 812 (2013) ("When a defendant pleads guilty, the court must find 'a factual basis for the plea' before 'entering judgment.'") (quoting Fed. R. Crim. P. 11(b)(3)); *Higgason v. Clark*, 984 F.2d 203, 208 ("[W]here it is impossible to find guilt from the facts stated as the factual basis for the plea the court is apt to find the plea involuntary.") (internal quotations omitted).

defendant's statements in court do not have the power to rewrite the law. They do not expand the reach of a statute and criminalize conduct falling outside its definition.

### 5. **Further Proceedings**

The Court has determined as a matter of law that, if the images underlying counts 9 through 11 only depict boys changing clothes, and if Banks failed to advise Taylor that such images would not fall within the scope of § 2251(a), Taylor's plea was not entered with the benefit of effective assistance from counsel. As noted, the Government did not respond to this portion of Taylor's motion despite being offered two opportunities to do so and has therefore waived its right to argue against these conclusions as this case proceeds.

Determining whether Taylor is entitled to relief and the extent of any relief to which he is entitled requires the Court to make determinations on two additional factual issues and, if necessary, one legal issue:

    (1) Did the images underlying counts 9 through 11 only depict boys changing clothes?

    (2) If so, did Banks fail to advise Taylor of his available defense?

    (3) If so, is Taylor entitled only to have his convictions and sentences vacated as to counts 9 through 11, or is he also entitled to be resentenced on the remaining child exploitation counts?

A negative answer to either of the first two questions means Taylor is not entitled to any relief, so the Court will resolve them one at a time.

Therefore, the Government shall have **through December 19, 2018**, to **file for *in camera* review** by the Court the depictions identified as Videos 9A, 10A, 11A. The Government will also **provide Taylor's attorney** an opportunity for an attorney-only review of the videos. The Government **must simultaneously file a statement** identifying (a) what segments of the videos (identified by specific time spans) feature sexually explicit conduct as defined above, (b)

describing the conduct depicted in those segments, and (c) explaining why the Court should deem that conduct sexually explicit. The Government is again reminded that it may not belatedly argue the definitions of "sexually explicit conduct" or "lascivious exhibition" as discussed in this Entry. Taylor shall have **fifteen (15) days** from his attorney's review of the videos to **file a responsive statement** explaining why the conduct depicted should not be deemed sexually explicit.

The Court recognizes that the time allotted to complete this step is brief but nevertheless does not anticipate granting any extension of time. The delays that have already transpired in briefing this case are well documented. Moreover, the Court presumes that the Government has already reviewed the videos thoroughly with these issues in mind.[8] Whatever additional review is required to complete a statement in support of *in camera* review should be minimal.

The Court will then issue findings of fact and conclusions of law regarding the depictions contained in Videos 9A, 10A, and 11A. If the issue is resolved in Taylor's favor, the Court will issue further directions, including a determination on whether a hearing is necessary for resolving the question of whether Banks advised Taylor as to his available defenses.

## IV.  CONCLUSION

For the reasons set forth in Part III (A) of this Entry, Taylor's Motion for Default Judgment, Dkt. [20], is **DENIED**.

For the reasons set forth in Part III (C) of this Entry, Taylor's § 2255 Motion is **DENIED** insofar as it asserts that his trial attorney's failure to challenge the admissibility of the evidence against him deprived him of his Sixth Amendment right to the effective assistance of counsel. No evidentiary hearing is warranted on this issue.

---

[8] By submitting its supplemental response asserting that Taylor was not entitled to relief on his § 2251(a) argument, counsel for the Government certified to the Court that his opposition was based on a reasonable inquiry and supported by the evidence. *See* Fed. R. Civ. P. 11(b). The Court cannot conceive that this would be possible without reviewing the three videos at issue and verifying that their contents violated the statute.

For the reasons set forth in Part III (D) of this Entry, the Government shall have **through December 19, 2018**, to **file for *in camera* review** the depictions identified as Videos 9A, 10A, 11A with the Court, and **provide Taylor's attorney** an opportunity for an attorney-only review the videos. The Government **must simultaneously file a statement** identifying (a) what segments of the videos (identified by specific time spans) feature sexually explicit conduct as defined above, (b) describing the conduct depicted in those segments, and (c) explaining why the Court should deem that conduct sexually explicit. The Court repeats that the Government is not permitted to argue the definitions of "sexually explicit conduct" or "lascivious exhibition" as discussed in this Entry. Taylor shall have **fifteen (15) days** from his attorney's review of the videos to **file a responsive statement** explaining why the conduct depicted should not be deemed sexually explicit. The Court does not anticipate granting any extension of time.

       **SO ORDERED.**

Date: 11/20/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jeremy Brian Gordon
LAW OFFICE OF JEREMY GORDON
jeremy@gordondefense.com

Zachary Lee Newland
JEREMY GORDON, PLLC
zach@gordondefense.com

Steven D. DeBrota
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
steve.debrota@usdoj.gov