## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RUSSELL CHARLES TAYLOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-03515-TWP-MPB |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER GRANTING IN PART MOTION TO VACATE CONVICTION
## AND DIRECTING ENTRY OF FINAL JUDGMENT

This matter is before the Court on the Motion filed by Russell Charles Taylor ("Taylor") for relief pursuant to 28 U.S.C. § 2255 (Filing No. 1). The action has proceeded through extensive briefing, two *in camera* reviews of evidence,[1] and an evidentiary hearing. For the reasons explained in this Order, the § 2255 Motion is **granted in part and denied in part**, and his guilty plea must be **vacated**.

## I.  LEGAL STANDARD

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28

---

[1] On December 19, 2018, the Government manually filed the videos underlying the three exploitation charges in question. *See* Filing No. 35–36. The Court reviewed those videos *in camera*. *See* Filing No. 41. On May 29, 2019, the Court heard testimony from Banks *in camera* for the purpose of determining the scope of permissible discovery. *See* Filing No. 61, 62, 70, 71. That hearing was recorded but has not been transcribed. Because Banks' *in camera* testimony was used only to resolve discovery disputes, the Court has not considered it as evidence in its ruling.

U.S.C. § 2255(a). The scope of relief available under § 2255 is narrow, limited to "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (internal citations omitted).

## II. FINDINGS OF FACT

On multiple occasions between March 2011 and April 2015, Taylor used multiple hidden cameras in his residences to produce and receive visual depictions of numerous minors engaging in sexually explicit conduct and he knew that the minors depicted in the images were under the age of 18 years. (Crim. Dkt. 28 at 13[2].) Taylor discussed, displayed and distributed some of his material to his friend and employer, Jared Fogle ("Fogle"). *Id*. at 13-14.

Taylor was originally arrested for his criminal conduct on state charges, and he retained attorney Bradley L. Banks ("Banks") to represent him in the state proceeding. (Filing No. 100 at 29:16–17.) However, on May 4, 2015, the Government filed a criminal complaint in federal court, charging Taylor with seven counts of producing child pornography in violation of 18 U.S.C. §2251(a), and one count of possessing child pornography in violation of 18 U.S.C.§ 2252(a)(4)(B). (Crim. Dkt. 1.) The state charges were ultimately dismissed. Indiana Federal Community Defender Gwendolyn Beitz ("Beitz") represented Taylor at his initial hearing on May 4, 2015. (Crim. Dkt. 6 at 1.) The following day, Banks, Adam B. Brower, and Eric J. Massey with the law firm of Banks & Brower, LLP, each entered their appearances in the federal case. (Crim. Dkt. 7, 8 and 9.)

---

[2] Citations to "Crim. Dkt. *x*" refer to documents filed in Taylor's criminal case, No. 1:15-cr-00165-TWP-DKL-1. Citations to "Filing No. *y*" refer to documents filed in this case, No. 1:16-cv-03515-TWP-MPB. Citations to "Hr'g ex. *z*" refer to exhibits admitted at the evidentiary hearing in this case, which have not been filed electronically. The **Clerk is directed** to docket the hearing exhibits electronically as an appendix to the evidentiary hearing and restrict their access to **court staff only**.

Although all three attorneys entered their appearances, Banks alone gave Taylor advice about the Government's plea offer.  (Filing No. 100 at 10:18-20.)

A.    **Legal Research**

Banks had never defended a federal criminal case before.  (Filing No. 100 at 55:16–20.) He took some steps to educate himself regarding the offenses with which Taylor was charged, including:

1.  discussing the case with Beitz, *see* Filing No. 100 at 29:22–30:6;

2.  reading § 2251 and "documents that were written about that statute," *id.* at 56:2– 11; and

3.  searching the internet for, googling, and reading articles on "hidden camera cases," *id.* at 31:24–32:4.

Banks' efforts to learn about the legal basis for Taylor's charges *did not* include reading case law to understand the definitions of "sexually explicit conduct" or "lascivious exhibition" under § 2256(2)(A).  (Emphasis added.)  *See* Filing No. 100 at 29:22–32:10, 56:3–58:8 (discussing steps taken to learn about the applicable law).  As the Court has noted throughout this litigation, case law is critical to defining those terms and, therefore, to determining the strength of an exploitation charge under § 2251(a).  Nevertheless, Banks felt "comfortable" with his knowledge of the exploitation statute, its elements, and their meanings after discussing the case with Beitz and reading the statute and articles he found online.  *Id.* at 58:4–8.

Banks invested significant time and energy in researching what sentence Taylor was likely to face if convicted.  He "did a tremendous amount of research on the sentencing guidelines." (Filing No. 100 at 31:9–10.)  He "purchased an entire book" on the sentencing guidelines "and read it, [and] did on-line research on it."  *Id.* at 31: 10–12.  He polled members of the local bar regarding the reputations of the undersigned judge, the Assistant U.S. Attorney prosecuting the

case, and the types of sentences defendants tended to receive in this Court when convicted of multiple counts of sexually exploiting children. *Id.* at 31:13–32:10.

This research left Banks with the impression that Taylor was likely to face a lengthy prison sentence if convicted:

> Q: And what did you find out about those sentences? Do they tend to be quite high?
>
> A: Yes. there was very vulgar language used by most of the attorneys in terms of what your client should expect.

*Id.* at 32: 11–14.

## B. Consideration of Defenses and Decision to Pursue Plea Agreement

Early in the case, Banks met with Taylor to learn more about the strength of the case against him and to discuss potential defense strategies. (*See* Filing No. 100 at 37:14–38:4.) In those discussions, Banks learned that Taylor had information that may be useful in prosecuting Jared Fogle, against whom the Government was interested in pursuing similar charges. *See id.* Based on his research and this information, Banks quickly determined that the strategy likely to result in the shortest prison sentence for Taylor was to cooperate with the Government's prosecution of Fogle and negotiate a plea agreement before it indicted him on the charges appearing in the original information and more. *See id.* at 37:18–38:6, 41:22–42:5, 63:16–19.

Banks discussed potential defenses to Counts 9 through 11 with Taylor, including:

> 1.)  Taylor did not intend to share the videos underlying Counts 9, 10 or 11 with Fogle, so there would be no lascivious intent:
>
> Q. What defenses to Counts 9, 10, and 11 did you discuss with Russell Taylor?
> A. We talked about the fact that he did not—that they did not—that there was an argument to be made that they did not meet the statutory definition of pornography.
> Q. Why?
> A. Why was that?
>
> Q. Yes. Why did you think they didn't meet the definition?
> . . .

A.  Those were not the targets. 9, 10, and 11 were not the targets that were to be shared with Mr. Fogle.

Q.  Okay.

A.  And so, by the fact that there would not be any lascivious intent as to the production of those videos, that would be a defense.

[Filing No. 100 at 61](#):6–62:5

2.)  There was "no lascivious intent as to the production of those videos."

[Filing No. 100 at 62](#):3–5.

3.)  Simply looking at pictures of nude children would not "be considered pornographic." ("There's a defense, also, to the—whether or not just viewing nude pictures would be considered pornographic.").

[Filing No. 100 at 62](#):5–8.

4.)  Taylor placed the cameras in the bathroom to find out whether the female children in the home were smoking marijuana or having sex with their boyfriends—not to record the boys engaged in sexually explicit conduct.

[Filing No. 100 at 63](#):5–8.

However, Banks believed a jury could reasonably convict Taylor on Counts 9 through 11

by finding that he attempted to exploit every child who was captured naked on camera.

*See* [Filing No. 100 at 46](#):22–47:16:

[M]y understanding was the government had alleged the creation of child pornography for every child that had entered these videos as either attempted or actual child pornography. So I was advising him with that framework in mind.

And with that framework in mind, as it pertained to the boys, I, to an extent, reassured him that I didn't personally believe he had intent to share videos of lascivious activity with his—with Mr. Fogle, but that in evaluating the case as a whole, that we were very likely to lose all of the other counts, that a jury was going to hear about all of the terrible things that had happened in those video, and see them for themselves. And that while we could win those three counts if you had taken the case as a whole, that it would be very understandable and very possible that a jury could say—which was my understanding of the government's theory, that if you entered that room, the intent was to catch you naked. And so we talked about attempt and that the video entering the cameras in the bathroom could be considered a substantial step.

5

*See also* [Filing No. 100 at 58](#):20–59:7:

> Q.  Okay. So break it down for me. How -- what did you tell Taylor about the elements of Counts 9, 10, and 11? What did you tell him or describe to him that the government had to prove?
>
> A.  In terms of 9—their general—we talked about the general theory of their case as it applied to all of the counts. So as it applied to all the counts, they would be able to look at what his—what the videos showed and that their theory was, because this was capturing children in a state of nudity, had showed genitalia and things of that nature, that any child that went into that room could be argued to be subject to child pornography as either attempt or actual if their genitalia was showing.

*See also* [Filing No. 100 at 80](#):22–81:4:

> Q.  Okay. Did you advise Taylor to plead guilty to Count 9 when you personally thought it wasn't a federal crime?
> A.  No.
>
> Q.  Okay. And that's because you had performed research on the definition of "sexually explicit conduct"?
>
> A.  It's because I believed that they had charged—attempt was used in one of the charging documents, and so there was a possibility that a jury could convict him on an attempt.

Moreover, because the Government had strong cases on the remaining counts, Banks

believed the jury may convict Taylor on Counts 9 through 11 regardless of their merits.

> We talked about, even though his intent wasn't to capture them in a nude state, necessarily, to show to Jared, that the jury may not believe that, because he had the intent to capture others to share with Jared.  And so I've heard it described as the drip effect, that once so many things have happened, you've just lost it."

*See* [Filing No. 100 at 47](#):17–22.

Most of all, Banks was concerned that any sentence Taylor would receive on the remaining

nine exploitation charges would be so massive that acquittal on Counts 9 through 11 really would

not benefit Taylor.  "[I]f you're going to lose nine counts," he explained at the evidentiary hearing,

"winning three is not going to do you a whole lot."  [Filing No. 100 at 63](#):12–13.

For this reason, Banks determined that the best defense strategy was to cooperate with the Government and negotiate an agreement by which Taylor would plead guilty to all charges but receive a shorter overall prison sentence. *Id.* at 62:13–16.

**C.**     **Plea Negotiations**

Banks filed his appearance as Taylor's attorney at 12:29 P.M. on May 5, 2015. (Crim. Dkt. 9.) Fewer than five hours later, he e-mailed Assistant United States Attorney Steve DeBrota ("DeBrota") to gauge interest in a plea agreement. (*See* hr'g ex. 131.)

It appears that negotiations did not truly begin until August 2015, but, from that point, they needed only four days to negotiate and finalize a plea deal. On August 24, 2015, Banks e-mailed DeBrota and asked, "When do you expect to have an offer for me to go over with Taylor?" (Hr'g ex. 9.) Banks and DeBrota discussed terms of an agreement the following day. (*See* hr'g exs. 9– 12.) On August 27, 2015, DeBrota arranged for Taylor to be transported to Indianapolis on August 28, 2015 so he could meet with Banks and finalize an agreement. (*See* hr'g ex. 16.) At 4:53 P.M. on August 27, 2015, DeBrota urged Banks to resolve the matter quickly and emphasized the importance of finalizing the plea the next day: "Russell Taylor will be brought up tomorrow. We need to get this done while he is here. Please read over the plea agreement. We are debating whether to re-extend the same offer, but want to make sure that the language works in any event." *Id.*

Four hours later, Banks replied, "I don't see any issues with the plea as written." (Hr'g ex. 18.) However, he contacted DeBrota again at 11:32 P.M. on August 27, 2015 with two questions about the impact of Taylor's cooperation on his sentencing guidelines range. (Hr'g ex. 19.) DeBrota responded early the next morning. *Id.* In addition to answering Banks' questions, DeBrota reiterated his "[b]ottom line": Taylor needed to sign the agreement that day. *Id.*

Banks met DeBrota's bottom line. He and Taylor signed the plea agreement later on August 28, 2015. (Hr'g ex. 4.) The agreement included a factual basis . *Id.* at ¶¶ 28–38. In signing the agreement, Banks and Taylor agreed that the materials underlying Counts 9 through 11 "included a lascivious exhibition of the genitals or pubic area of the relevant minor." *Id.* at ¶¶ 32–33. Banks believed that statement was accurate at the time he signed it. (*See* Filing No. 100 at 74:2–19.)

On September 1, 2015, an Information was filed charging Taylor with Counts 1 through 12: Sexual Exploitation of a Child in violation of 18 U.S.C. § 2252(a), and Count 13: Distribution and Receipt of Child Pornography and Conspiracy to Distribute and Receive Child Pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). (Crim. Dkt. 24.) Later that day, Taylor petitioned to enter a guilty plea. (Crim. Dkt. 28.) The Court set a change of plea and sentencing hearing for December 10, 2015. (Crim. Dkt. 32.)

On November 3, 2015, the Probation Office filed the final Presentence Investigation Report (PSR). (Crim. Dkt. 37.) The PSR identifies Children 9 through 11 as Taylor's sons and stepson. *Id.* at ¶¶ 11(d)–(e). The PSR describes the videos underlying Counts 9 through 11 as depicting the boys "changing clothes in their bedrooms." *Id.* These descriptions conflict with the videos the Court viewed in this § 2255 proceeding, which showed boys showering or using the bathroom. Neither party objected to the PSR or addressed this inconsistency in its sentencing memorandum or at the sentencing hearing.

During an in-person meeting before the plea and sentencing hearing, Taylor expressed to Banks that he was upset about having to plead guilty to the three counts involving his sons and stepson. (Filing No. 100 at 45:23–46:13.) Banks believed that Taylor did not intend to capture sexually explicit videos of the boys, but he advised Taylor that he still believed that a jury could

reasonably convict him of all 13 counts. *See id.* at 46:2–16. Moreover, Banks believed the Government would refuse to negotiate a plea agreement on the remaining ten counts if Taylor challenged Counts 9 through 11. *Id.* at 47:23–48:10. Therefore, he advised Taylor that he would "probably be much worse off in terms of sentencing" if he challenged those three charges than if he just pled guilty to all thirteen. *Id.* at 48:11–15. Banks recalls Taylor stating that he wanted to continue with his guilty plea at least in part to spare his children from having to testify at a trial. *Id* at 48:24–49:8.

The Government and Taylor, respectively, filed their sentencing memoranda on December 3 and 4, 2015. (Crim. Dkts. 40, 42.) Neither party noted the discrepancy between the video evidence underlying Counts 9 through 11 and the evidence described in the PSR.

On December 10, 2015, Taylor pled guilty to Counts 1 through 12: sexual exploitation of children in violation of 18 U.S.C. § 2251(a), and Count 13: receipt and distribution of child pornography and conspiracy to distribute and receive child pornography in violation of 18 U.S.C. § 2252(a)(2). (Crim. Dkt. 49 at 42.) In the plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the Government agreed not to ask for a sentence greater than 35 years' imprisonment and Taylor agreed not to ask for a sentence less than 15 years imprisonment. (Crim. Dkt. 28 at 6.) The Court read the factual basis set out in the plea agreement. (Crim. Dkt. 49 at 27:19–30:17.) Taylor agreed that the factual basis was true. *Id.* at 30:21–23. The factual basis in the plea agreement did not describe in detail any of the conduct underlying the 12 exploitation counts. When the Court inquired of Banks whether there was anything he needed to change or correct about the factual basis, Banks responded, "nothing additional." *Id*. at 31: 4. The same inquiry was made to DeBrota and he responded for the record, "the parties went over the material, the child pornography in discovery, so we have agreed to this language to broadly define it." *Id.*

at 31:5–9.  The Court accepted Taylor's guilty plea and deemed it knowing and voluntary.  *Id.* at 42:11–22.

At the outset of the sentencing phase, Banks registered several objections to the PSR.  He asserted, and the Court accepted, that Child 1 was Taylor's intern and not a close relative as described in the PSR.  *See id.* at 43:22–44:25.  Banks objected to the PSR's statement that Taylor had sexual contact with Children 1 and 2 before their sixteenth birthdays.  *See id.* at 45:1–22.  Banks sought to clarify that Taylor never believed his conduct was justifiable, as the PSR reported, but that he thought it was less harmful than the abuse he suffered as a child; and that a childhood ulcer that the PSR attributed to stress from his parents' divorce was truly caused by his own childhood sexual abuse.  *Id.* at 45:23–46:18.  Finally, Banks wished to clarify that the PSR omitted the fact that Fogle referred to himself as Taylor's "daddy."  *Id.* at 46:21–47:19.

Banks did not object to the PSR's inaccurate description of the video underlying Counts 9 through 11.  At the § 2255 evidentiary hearing, Banks could not recall whether he did not object because he overlooked the discrepancy or because he thought the discrepancy was immaterial:

> I don't know if that was something in this entire document that was overlooked, that we didn't consider material. The issue of the location, I don't think, was a material thing, but I don't know. I don't know if we didn't see it, didn't catch it, or if we didn't find it to be material. I don't know.

Filing No. 100 at 90:20–25.

During the sentencing phase of the change of plea and sentencing hearing, the Court addressed each exploitation count individually in explaining the basis for Taylor's sentence. Regarding Counts 9 through 11,  the Court discussed the videos underlying these charges as they were erroneously described in the PSR:

> Count 9, with respect to child 9, this is also a very close relative of the defendant by marriage. This child was under 12 years old at the time of the offense, and was recorded changing clothes in the nude, in his bedroom, without knowledge or consent.

Count 10 is child 10, and Count 11, child 11. These are the defendant's sons. Both were under the age of 12 at the time of the offense, both were recorded nude, changing clothes in their bedroom, without their knowledge or consent. The Court recognizes that the defendant didn't—there's no evidence that he shared this child pornography with Mr. Fogle, but he didn't destroy it or erase it either. He saved it and kept it and presumably used it for whatever deviant purpose.

Crim. Dkt. 49 at 167:9–21.  Banks did not address this discrepancy at any point in the proceeding.

The Court imposed concurrent, 27-year sentences on all twelve exploitation counts. Nevertheless, in discussing the basis for Taylor's sentence, the Court referred multiple times to Counts 9 through 11 and Taylor's victimization of his children, stepchildren, and other children who resided in his home:

> Taylor alleges that Mr. Fogle requested that he produce the child pornography of children in the defendant's home. *And these were children that this defendant should have loved and cared about.* Mr. Fogle didn't care about those children. *Those were your children.*
>
> . . .
>
> In their sentencing memorandum, defense counsel states that Taylor recognizes the seriousness of his offenses.  He claims that the first video was inadvertent as he had cameras throughout his home attempting to identify thieves. However, the nature and circumstances of the offenses are very egregious. *Taylor chose to victimize his family members and those close to him. These children trusted him, and their parents trusted him by allowing those children to be in his home.*
>
> . . .
>
> None of these children were aware that they were being videotaped. The defendant, as I stated earlier, distributed and shared many of these videos with his employer and friend, Jared Fogle. The defendant says that he believes this conduct was mild compared to the abuse that he suffered as a child, but *what is particularly disturbing is that he preyed on those entrusted to his care.*

Crim. Dkt. 49 at 163:14–18; 164:4–12; 168:5–11 (emphases added).

The Court sentenced Taylor to concurrent prison terms of 324 months on each of the twelve exploitation counts and 240 months on the pornography count.  (Filing No. 46 at 3.)

On December 29, 2016, Taylor moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Filing No. 1.) Taylor asserted two bases for relief: first, that trial counsel was ineffective for failing to seek suppression of the evidence obtained from his home as a result of an unconstitutional search warrant, and second, that his plea was the product of ineffective assistance because trial counsel failed to advise Taylor that three of the charged counts did not involve "sexually explicit conduct" nor explain to Taylor that some of the charges related to his own children. *Id*. at 4-5.

On November 20, 2018, the Court denied Taylor's Motion for Default Judgment and his § 2255 motion with respect to his assertion that Banks failed to move to suppress evidence obtained in two searches of his residence. (*See* Filing No. 30 at 7-16.) However, the Court permitted the action to continue with respect to Taylor's argument that Banks failed to advise him that there was no factual or legal basis to support three of the exploitation charges. *See id.* at 16-29.

It is unclear when the three exploitation charges that are the subject of this § 2255 proceeding—Counts 9 through 11 of the Information—entered the picture as potential charges. As Banks testified at the hearing, "[T]here wasn't 9, 10, and 11 until the end." (Filing No. 100 at 45:16–19.) At least one count in the original criminal complaint appears to refer to one of the videos underlying Counts 9 through 11.[3] The § 2255 proceeding required the Court to view the videos that were the bases for Counts 9 through 11. Following its *in camera* review, the Court described the videos as follows:

> One video shows a boy undressing and stepping into the shower before closing the curtain. While the boy is standing on the right side of the frame, his genitals are very briefly visible.

---

[3] *See* Crim. Dkt. 1 at ¶ 39 ("This is a one minute video . . . showing a minor boy ("Child 3") . . . standing nude in a bathtub. While in the bathtub and as he exits, his genitals or pubic area is visible.").

Two videos show boys exiting the shower and drying off. In the first of these videos, the boy's genitals again are very briefly visible while he is drying off at the right edge of the frame.

If, as the United States suggests, the boy's genitals were visible at the beginning of the clip as he exited the shower from the center of the frame, they were visible too briefly for the Court to see while watching the video at regular speed. In the second of these videos, the boy's genitals and pubic area are never visible. As the United States notes, the boy appears to touch his genitals in the course of drying himself. However, he does not appear to be masturbating or otherwise touching his genitals in a sexual manner.

The final two videos depict a boy using the toilet. In one, he appears to urinate. In the other, he appears to sit on the toilet. The boy's genitals and pubic area are blocked by either clothing or the vanity throughout both clips.

Filing No. 41 at 2–3.

The Court has determined as a matter of law that these videos do not depict sexually explicit conduct and that they do not support Counts 9 through 11. (*See* Filing No. 41 at § III.) The Court has further determined that, if Banks failed to recognize and advise Taylor that the videos did not support Counts 9 through 11, Taylor could not have entered his plea with the benefit of effective assistance from counsel. (*See* Filing No. 30 at 27.) The Government has waived arguments to the contrary. (*See* Filing No. 61 at § I (discussing Government's failure to timely raise arguments that Taylor could be proven guilty of Counts 9 through 11, and counsel could have properly recommended guilty plea, regardless of videos' contents)). [4]

---

[4] The Court previously noted the Government's extensive delays in briefing the merits of the § 2255 motion, and that its initial responses were both incomplete and contradicted by settled law. (Filing No. 30 at 4). The Court determined, by failing to oppose Taylor's well-supported claim that the videos did not depict sexually explicit conduct, the Government waived its opportunity to do so as the case moves forward. See *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003)(("We have repeatedly warned that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues))." The Government's repeated efforts to advance waived arguments has required the Court to frequently clarify the issues that are in question. The Government correctly recognizes that the Court's waiver rulings encompass any argument "that the videos underlying Counts 9 through 11 would constitute an attempt." (Filing No. 96 at 15.) The Court declines the Government's latest invitation to disregard waiver and "consider an attempt theory." *See id.* at 15–16. Moreover, for the reasons discussed at Filing No. 61, § I, neither the videos nor the evidence described in the PSR support a good-faith argument that Taylor attempted to exploit the three boys. And, in any event, the Government has waived that argument.

Thus, the focus of this proceeding has narrowed to what measures Banks took to learn about the law and evidence underlying Counts 9 through 11 and how he advised Taylor with respect to those charges.

### III. CONCLUSIONS OF LAW AND ANALYSIS

Taylor seeks relief under § 2255 on the theory that he entered his guilty plea and was sentenced without the benefit of his Sixth Amendment right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, Taylor bears the burden of showing that (1) Banks' performance fell below objective standards for reasonably effective representation, and (2) this deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011). In the context of a claim of guilty plea ineffectiveness, "a defendant has the right to effective assistance of counsel in considering whether to accept" a plea. *Lafler v. Cooper*, 566 U.S. 156, 168 (2012).

### A. *Strickland* Performance

To satisfy the first prong of the *Strickland* test, the § 2255 movant must direct the court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The court must then consider whether, in light of all of the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Id*. The court must "determine whether counsel's representation 'fell below an objective standard of reasonableness.'" *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 688). This means that Taylor must first demonstrate that "counsel's representation fell below an objective standard of reasonableness," and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Williams v. Taylor*, 529 U.S. 362, 390–91(2000). A reasonably competent attorney "will attempt to learn all of the

relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty." *Bethel v. United States*, 458 F.3d 711, 717 (7th Cir.2006). "It is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks." *Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009). Nevertheless, a "single error may suffice if that error is sufficiently egregious and prejudicial." *Id.* (internal citations and quotation marks omitted).

### 1.    Failure to Study Case Law

An assessment of Banks' performance in this case must begin with the fact that this was his first criminal case in federal court. (Filing No. 100 at 55:16–20.) This does not, by itself, mean that he represented Taylor ineffectively. "[A]n attorney can render effective assistance of counsel even if he has had little prior experience in criminal cases." *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993). "Every experienced criminal defense attorney once tried his first criminal case." *United States v. Cronic*, 466 U.S. 648, 665 (1984). "A lawyer can provide adequate representation in a wholly novel field through necessary study." Ind. R. Prof'l Conduct 1.1, cmnt. [2].

Banks' inexperience in federal criminal proceedings became problematic, however, because he did not undertake the study and research he needed to competently assist Taylor. "Some important legal skills, such as the analysis of precedent, the evaluation of evidence and legal drafting, are required in all legal problems." *Id.* "[A]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton v. Alabama*, 571 U.S. 263, 274 (2014).

Reviewing case law was critical to understanding the strength of the charges and evidence against Taylor. Taylor pled guilty to employing, using, persuading, inducing, enticing, or coercing the three boys to engage in "sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a). 18 U.S.C. § 2256(2)(A) identifies five categories of sexually explicit conduct. The videos of the boys do not show sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse. Therefore, the videos could only depict sexually explicit conduct if they showed a "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). As the Court noted early in this litigation, "[L]ascivious exhibition of the genitals or pubic area" is not further defined by statute. *See* Filing No. 30 at § III(D)(3). "[M]ore than nudity is required to make an image lascivious; the focus of the image must be on the genitals or the image must be otherwise sexually suggestive." *United States v. Griesbach*, 540 F.3d 654, 656 (7th Cir. 2008). "Lascivious means 'tending to arouse sexual desire.'" *United States v. Miller*, 829 F.3d 519, 524 (7th Cir. 2016) (citing Webster's Third New Int'l Dictionary). To determine whether a nude image amounts to a "lascivious exhibition," "the finder of fact may look to the creator's intent in making" the images in question. *Id*. at 525. Accordingly, because these phrases are not defined by statute, an attorney must review case law to understand what images fit the definition.

In his first federal criminal case, Banks limited his research into his client's charges and potential defenses to reading the operative statute and some articles he found on the internet. As the Court discusses more fully below, he quickly diverted his efforts to researching likely sentences without attention to the question of whether Taylor had actually committed the offense with which he was charged. Given his inexperience, Banks did not undertake the preparation and study necessary to understand the charges against Taylor and how he could defend against them. This

reflects the "ignorance" and "failure to perform basic research" that the Supreme Court deemed a "quintessential example of unreasonable performance" in *Hinton*. *See* 571 U.S. at 274.

2.      **Failure to Understand Critical Evidence**

The Court scheduled an evidentiary hearing in large part to determine whether Banks ever watched the three videos that were the subjects of Counts 9 through 11 before Taylor entered his guilty plea. (*See* Filing No. 46 at 5.)  It would seem to go without saying that an attorney cannot effectively represent a criminal defendant without viewing the evidence on which his charges are based.  The courts have eliminated all doubt by saying so—repeatedly.  *See E.g.*, *Rompilla v. Beard*, 545 U.S. 374, 389 (2005) ("It flouts prudence to deny that a defense lawyer should try to look at a file he knows the prosecution will cull for aggravating evidence, let alone when the file is sitting in the trial courthouse, open for the asking."); *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986) ("Morrison's attorney failed to file a timely suppression motion . . . because, until the first day of trial, he was unaware of the search and of the State's intention to introduce the bedsheet into evidence. Counsel was unapprised of the search and seizure because he had conducted no pretrial discovery. . . . [W]e find counsel's decision unreasonable, that is, contrary to prevailing professional norms."); *United States v. Marquez Perez*, 835 F.3d 153, 166 (1st Cir. 2016) ("[C]ounsel's failure to watch the videos appears to fall below *Rompilla*'s standard."); *Elmore v. Ozmint*, 661 F.3d 783, 861 (4th Cir. 2011) ("Elmore's lawyers disregarded their professional obligation to investigate critical prosecution evidence, thereby engendering 'a breakdown in the adversarial process that our system counts on to produce just results.'" (quoting *Strickland*, 466 U.S. at 696)).

The Court is not persuaded that Banks watched the three videos before Taylor entered his guilty plea.  Banks could not testify affirmatively that he watched the videos.  He could not

remember what evidence he reviewed. *See, e.g.*, Filing No. 100 at 33:10–11 ("We saw numerous videos and photographs. My memory of those are not specific in terms of the identity of people."). Banks testified that he remembered seeing a video of a boy with short, dark hair in a bathroom. *Id.* at 34:2–8. But Banks and his counsel watched the videos two days before the evidentiary hearing. *See id.* at 35:12–36:3. This makes it impossible to determine with any confidence whether Banks remembered images of a boy with short black hair in a bathroom because he watched them to assist Taylor or because he watched them to prepare for the evidentiary hearing in this proceeding.

Banks' failure to object to the substantial discrepancy between the videos and their description in the PSR reinforces the Court's belief that he never viewed the videos in the first place. At the evidentiary hearing, Banks could not recall whether he failed to recognize the discrepancy or just thought it was immaterial. But, at sentencing, Banks objected to numerous other factual inaccuracies he perceived in the PSR—and the record calls the significance of some of those objections into doubt. *See, e.g.*, Crim. Dkt. 49 at 44:11–15 ("If it's not—regardless if it's a close relative, if he was in a . . . supervisory position with the child . . . it would not change the calculation."), *id*. at 46:19–20 ("Okay. It was really just a clarification."), *id*. at 47:15–17 ("I don't know what the relevance is of the fact that Mr. Fogle referred to himself as the defendant's daddy.").

Ultimately, whether Banks watched the videos during his representation of Taylor is academic for purposes of this § 2255 action. The record is clear that, even if Banks watched the videos, he did not recognize their legal significance. If Banks watched the videos, he still wrongly determined that they captured sexually explicit conduct. *See* Filing No. 100 at 74:1–19. At minimum, Banks determined incorrectly that a jury reasonably could find Taylor guilty of Counts

18

9 through 11 just because the other charges against him were strong. *See id.* at 47:2–22. He never considered moving to dismiss Counts 9 through 11 or moving for a directed verdict on those charges. *Id.* at 79:4–24. Apparently, he also did not consider that, if Counts 9 through 11 went to a jury, the jury would be instructed to consider each charge, and the evidence supporting it, individually. *See, e.g.*, *Pattern Crim. Jury Instrs. of the Seventh Cir.*, 2012 ed., at 657 ("If . . . you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt *as to the charge you are considering*, then you should find the defendant not guilty of that charge.") (emphasis added).

Effective representation must extend beyond merely viewing evidence. A criminal defendant can look at evidence. He counts on his attorney to evaluate evidence under the applicable law, understand how it supports or detracts from the government's case, and use it to advocate for him. At minimum, Banks failed in this case to understand that the videos did not support Counts 9 through 11. As the Court discusses more fully below, he further failed to meaningfully consider defenses to these charges before advising Taylor to plead guilty.

### 3. Resignation to Guilty Plea Including Counts 9 through 11

Banks determined early in the case that he would pursue a plea bargain that encompassed all thirteen charges. He never seriously considered a different approach, even though Counts 9 through 11 were unmistakably insufficient. In doing so, Banks advised Taylor to plead guilty to three charges the Government could not prove.

Banks began pursuing a favorable plea agreement before he thoroughly apprehended the evidence and defenses applicable to Counts 9 through 11. He appeared as Taylor's attorney at 12:29 P.M. on May 5, 2015. (Crim. Dkt. 9.) He contacted DeBrota to discuss potential plea deals fewer than five hours later. *See* Hr'g ex. 131. He never read case law on what amounts to sexually

explicit conduct, but he "did a tremendous amount of research on the sentencing guidelines." Filing No. 100 at 31:9–10. He purchased and read an entire book on sentencing guidelines, discussed likely sentences with the local bar, and determined that Taylor would face a harsh sentence if convicted. *Id.* at 31:13–32:14.

Once Taylor indicated he was willing to cooperate in the Government's prosecution of Fogle, Banks determined that Taylor would likely achieve his most favorable sentence—at least in terms of time in prison—by using his cooperation as leverage to negotiate a favorable plea bargain. (Filing No. 100 at 37:25–38:4.) Those discussions were always founded on the premise that Taylor would plead guilty to all charges. Banks' hearing testimony makes clear that he never seriously discussed defenses specific to Counts 9 through 11 with Taylor because they always approached the charges collectively:

Q. So what other defenses to Counts 9, 10, and 11 did you discuss with Taylor?

A. We didn't discuss—we were cooperating with the government, so we discussed the case as a global resolution to how to resolve this case to minimize his impact. To go to trial on 9, 10, and 11 was to go to trial on all the counts.

*Id.* at 62:11–16.

The Government characterizes Banks' decision to pursue a global plea as a "strategic choice" that is "virtually unchalleng[e]able" under *Strickland*'s deferential standard. *See* Filing No. 96 at 20 (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). It is tempting to credit Banks' judgment that Taylor would have received a harsher prison sentence if he challenged Counts 9 through 11 than he negotiated by cooperating and pleading guilty to all 13 charges. But neither the law nor the facts allow the Court to succumb to that temptation.

As to the law, "strategic choices . . . are virtually unchallengeable" only if they are "made after thorough investigation of law and facts." *Strickland*, 104 U.S. at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable

professional judgments support the limitations on the investigation." *Id.* at 690–691. Similarly, a "strategic choice based on a misunderstanding of law or fact . . . can amount to ineffective assistance." *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015).

Banks began negotiating a global plea agreement without thoroughly researching the statute Taylor was accused of violating, understanding how that statute applied to the evidence underlying Counts 9 through 11, or meaningfully considering how to defend against those three charges. This approach to Taylor's defense was objectively unreasonable. The Government cannot transform such a deficient effort into effective assistance by calling it "strategic." *See Wiggins*, 539 U.S. at 527 ("Even assuming [counsel] limited the scope of their investigation for strategic reasons, *Strickland* does not establish that a cursory investigation automatically justifies a tactical decision . . . . Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy.")

As to the facts, Banks' recommendation of a global plea was not a strategic *choice* because he did not *choose* it from among other options. Banks never meaningfully considered defending against Counts 9 through 11. (*See* Filing No. 100 at 62:11–16.) Because Banks never considered an alternative to a global plea, his pursuit of a global plea was not a reasonable strategic decision. *See, e.g.*, *Thomas v. Clements*, 789 F.3d 760, 768 (7th Cir. 2015) ("It is undisputed that counsel did not reach out to or even consider talking to a pathology expert to review Dr. Mainland's conclusion. In many cases, we would chalk such a decision up as strategic or tactical. . . . But we cannot reach such a conclusion because counsel admitted his failure to reach out to an expert was not a conscious decision—he just did not think to do so."); *Woolley v. Rednour*, 702 F.3d 411, 423 (7th Cir. 2012) ("Though we often defer to an attorney's calculated decision to forgo a certain trial

strategy, it is undisputed that there was no strategic rationale underlying these errors. Stockton testified that the idea of securing an expert witness 'never crossed my mind.'").

The Government asserts that Banks' failure to consider any challenge to Counts 9 through 11 was justified because DeBrota would have responded by ending negotiations, bringing additional charges, and forcing Taylor to stand trial on all of them. This argument relies on Banks' testimony that DeBrota refused his request to drop Counts 9 through 11:

> And then, on top of that, it was always my recommendation, because DeBrota was 100 percent clear, every single child in that video was going to have his count or her count, period. So I did have one conversation with him where I asked, "Can we get rid of the count with the boys?" And I asked him, I think, to knock five years off of his 35-year top.

> I didn't even get the words, I don't think, halfway out, and he was cutting me off and telling me, "Nope, that's not how it works. Every single kid gets a count. If you're in that video, you're going to get a count. I'm not going to have one of these siblings not have a count and the other siblings have it, we're not doing it."

> And so my advice was, "If you're going to go to trial and lose nine counts, you are probably going to be much worse off in terms of sentencing than if you take the plea agreement that's in front of you, from a practical and legal standpoint."

Filing No. 100 at 47:23–48:15. This justification suffers from two fatal flaws.

First, the above testimony reflects that Banks asked DeBrota to *drop* charges involving the three boys. Banks never alerted DeBrota to the fact that the charges involving the three boys were *legally unsupportable*. A request to drop charges raises different considerations and motivations for a prosecutor than a challenge to sufficiency of those charges. The former is a toothless request to give up on counts the prosecutor believes he can win. It presents no incentive for the prosecutor to reconsider his original position. The latter is a message that, if the counts go to trial, the prosecutor will lose. It provides a good reason for the prosecutor to reconsider his stance. There is no reason to assume that DeBrota would have reacted to case law showing that Counts 9 through

22

11 were unsupportable with the same all-or-nothing response he gave to Banks' request to "get rid of" Counts 9 through 11.

Second, the Government falsely portrays the plea negotiation as a zero-sum game in which Taylor had only two courses of action: plead guilty to all 13 counts, or face trial on those 13 and more. Taylor had other options. He could have confronted the Government with the weaknesses in Counts 9 through 11 and conditioned his cooperation on the removal of those charges. If DeBrota shut down negotiations and proceeded to an indictment, Taylor could have moved to dismiss the charges involving the boys and then sought to resume negotiations. Moreover, Taylor could have pled guilty without a plea agreement to Counts 1 through 8, 12, and 13 and moved to dismiss Counts 9 through 11.[5] And, of course, Taylor could have proceeded to trial, where he would have had a strong case (indeed, a strong motion for judgment of acquittal) on Counts 9 through 11.

Of course, the Court cannot know how DeBrota would have responded to a more assertive approach by Banks. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. But fairly assessing counsel's performance also does not mean pretending counsel had no choice but to accept the prosecutor's demands. The record indicates that Banks did not utilize the options that were available to him.

*Strickland* emphasizes that the core of the Sixth Amendment right to effective assistance is a requirement that counsel stand up as an adversary to the prosecution. *E.g.*, *Strickland*, 466 U.S. at 685 ("The right to counsel plays a crucial role in the adversarial system embodied in the

---

[5] A successful pretrial motion to dismiss Counts 9 through 11 would also eliminate the Government's proffered "Secondary Motive to Accept the Plea"–Taylor's desire that his children not testify at trial. *See* Filing No. 96 at 8.

Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled.") (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275 (1942)). The Court concludes that Banks recommended that Taylor plead guilty to Counts 9 through 11 without serving as his advocate or as an adversary to the Government.

### 4. **Favorability of Overall Sentence**

The Government's position in this matter is underscored by the suggestion that Banks represented Taylor effectively because his cumulative sentence following his guilty plea was less harsh than the sentence he might have received had he put up a fight on Counts 9 through 11. But the Court is not aware of any precedent that makes years served the sole measure of counsel's performance. The Government cites extensively to *Premo v. Moore*, 562 U.S. 115 (2011), and its emphasis that defendants who negotiate pleas must accept certain risks with their rewards:

> The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

*Id.* at 124–125.

But *Premo* does not describe this case. Taylor's plea does not look bad in hindsight because the Government's case *weakened* after he signed the agreement. It looks bad because Taylor's attorney failed to recognize that the Government *never had a case* on Counts 9 through 11. Counsel performing in accordance with reasonable standards of professionalism would have understood that the Government could not prove Counts 9 through 11 and advised Taylor accordingly. Unfortunately, Banks did not.

### 5. **Conclusion: Deficient Performance**

For the reasons set forth above, Banks' performance in representing Taylor fell short of objective standards of professional reasonableness. Because Banks' representation of Taylor was deficient under *Strickland*, the Court must shift its attention to prejudice.[6]

### B. *Strickland* **Prejudice**

After finding counsel's performance deficient under *Strickland*, a reviewing court must "ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Padilla*, 559 U.S. at 366 (quoting *Strickland*, 466 U.S. at 688). Where the § 2255 movant has pled guilty, he must establish prejudice by showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty . . . ." *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985)); *see also Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009) (quoting *Hill*, 474 U.S. at 59).

The Government rightly notes that the operative question under *Hill* is not whether, with effective counsel, Taylor would have agreed to a *different* plea arrangement. (*See* Filing No. 96 at 27 n.3.) "Under *Hill* and its progeny, a claim that a defendant would not have entered this particular plea agreement is not sufficient to show prejudice." *Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006). "To demonstrate prejudice, the defendant must show that he would not have pled guilty and would have insisted on going to trial." *Id.*

---

[6] The Government contends that Banks' "reputation for effectiveness is on the line" and that he "should not be punished" with a ruling in Taylor's favor. Filing No. 96 at 16. Banks is not a party to this § 2255 proceeding. The Court's ruling will neither reward nor punish him, nor will it determine his reputation for effectiveness.

Five years ago, the Government charged Taylor with twelve counts of sexually exploiting children. Three of those counts were based on evidence that did not satisfy the exploitation statute. The sole issue here is whether Banks— five years ago, in his very first federal criminal case—effectively defended Taylor against those charges. The record shows he did not. The Court's ruling entitles Taylor to certain relief with respect to his plea and sentence. It condemns Banks to nothing. This decision's impact on Banks is not an appropriate consideration for deciding the merits of the case or what legal arguments should be entertained.

The Court has determined as a matter of law that the evidence underlying Counts 9 through 11 could not support sexual exploitation charges. Under these circumstances, the question of prejudice becomes simple: If Taylor had been represented by effective counsel, that attorney could not have allowed him to plead guilty to Counts 9 through 11, and the Court could not have accepted his plea.

"Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). The Constitution's standard "was and remains whether the plea represents a voluntary and intelligent choice". *North Carolina v. Alford,* 400 U.S. 25, 31 (1970). "[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 466 (1969). For this reason, Rule 11 "requires the judge to satisfy [her]self that there is a factual basis for the plea" and "'that the conduct which the defendant admits constitutes the offense charged.'" *Id.* at 467 (quoting Fed. R. Crim. P. 11, cmnt. on 1966 amendments). "'[W]here it is impossible to find guilt from the facts stated as the factual basis for the plea' the court is apt to find the plea involuntary." *Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) (quoting *United States v. Johnson*, 612 F.2d 305, 309 (1980)).

In hindsight, the Court agrees with Taylor that the factual basis in this case was woefully inadequate. In a conclusory manner, the stipulated factual basis stated "material involving minor victims 1 through 12," was recovered and "[a]ll of the images and videos included a lascivious exhibition of the genitals or pubic area of the relevant minor, while some material also included other sexually explicit conduct, depending upon the minor involved." (*See* Crim. Dkt. Filing No. 49 at 29 ¶¶ 11-20). At the evidentiary hearing, Taylor testified that he signed the agreement

without knowing who victims 3, 4, 5, 6, 7, 8, 9, 10, 11, or 12 were; because he "trusted his counsel to lead him correct"—"he told me I bought the cameras, I set them up to capture kids naked, I was guilty." ([Filing No. 100 at 20](#) ¶¶ 7-20.) The purpose behind the Rule 11 factual basis requirement is to protect a defendant who understands the nature of the charge but does not understand that his conduct does not actually fall within the definition of the crime. *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002).

Attorneys who practice in this Court must abide by the Indiana Rules of Professional Conduct. S.D. Ind. L.R. 83-5(e). Under Rule 3.3(a)(1), "Candor Toward the Tribunal," an attorney "shall not knowingly . . . make a false statement of fact or law to a tribunal." Additionally, under Rule 3.3(a)(2), an attorney "shall not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."

Attorneys who practice in this Court must abide by the Seventh Circuit's Standards for Professional Conduct. As a consequence, they shall not "knowingly misrepresent, mischaracterize, misquote, or miscite facts or authorities in any oral or written communication to the court." *See id.* (avail. at http://www.ca7.uscourts.gov/rules-procedures/rules/rules.htm#standards).

In *Lewis v. Lane*, 832 F.2d 1446 (7th Cir. 1987), during a state court sentencing proceeding, prosecutors presented evidence of prior convictions that they knew to be false. Defense counsel stipulated to the convictions without attempting to verify them. The Seventh Circuit found that defense counsel's stipulation to the evidence was both unreasonable and prejudicial—and admonished the prosecutors and state post-conviction counsel for making false representations to the court, citing Illinois ethics Canon 7, Rule 7-102(a) (a lawyer shall not knowingly make a false statement of fact or use false evidence). *Lewis*, 832 F.2d at 1459. The Seventh Circuit found that

Lewis was prejudiced by his counsel's stipulation to false evidence of prior convictions. *Id*. at 1457. ("That petitioner was prejudiced by Mr. Kinser's stipulation to the existence of two prior felony convictions which in fact did not exist can hardly be disputed.). *See* also *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (misinformation of a constitutional magnitude, such as uncounseled guilty pleas, may not be relied upon in imposing sentence); *United States v. Cameron,* 814 F.2d 403, 407 (7th Cir.1987).

In imposing his sentence, this Court relied upon Taylor's admission that he sexually exploited his own sons and stepson, as charged in Counts 9, 10 and 11. If Taylor insisted on pleading guilty to Counts 9 through 11, even after counsel advised that the Government could not prove him guilty of those charges, the Court still would have had to determine a factual basis for the plea. In the original proceeding, the Court accepted the factual basis the parties asserted, including the critical statement that "[a]ll of the images and videos included a lascivious exhibition of the genitals or pubic area of the relevant minor, while some material also included other sexually explicit conduct, depending upon the minor involved." (Crim. Dkt. 49 at 29:17–20.) The Court now knows this to be untrue.

The videos themselves show the original factual basis to be false with respect to Counts 9 through 11. An attorney who watched the videos and knew the law defining sexually explicit conduct could not offer that factual basis to the Court without knowingly making a false statement of law and fact in violation of Indiana and Seventh Circuit rules. And, even if Taylor insisted on pleading guilty and maintained that the videos underlying Counts 9 through 11 included sexually explicit conduct, both his attorney and the prosecutor would have been obligated under the Indiana and Seventh Circuit rules to disclose the legal authority making clear that the videos did not include sexually explicit conduct.

In determining the existence of prejudice, the court must consider "the totality of the evidence before the judge or jury." *Strickland* at 2068. Here, the Court must consider whether Taylor would have pled guilty if Banks assessed the law and evidence properly. Taylor testified at the evidentiary hearing that but for counsel's errors, he would not have pled guilty to Counts 9, 10 and 11, the counts involving sexual exploitation of his sons. More importantly, if Banks had assessed the case competently, his duties to the Court would have required him to reveal the absence of a factual basis for Counts 9 through 11. Consequently, the Court could not have accepted a guilty plea from Taylor on those charges. There is no question that competent work by counsel would have produced a different outcome in this case. Accordingly, the Court finds prejudice under the *Strickland* standard.

**C.     Remedy for 2255 Relief**

Having determined that counsel was ineffective under the *Strickland* standard, the Court is directed to fashion an appropriate remedy in granting habeas relief. *See* 28 U.S.C. § 2255(b). Taylor asserts that an adequate remedy to fix the ineffective assistance of counsel that he received is vacatur of the entire plea agreement. (Filing No. 94 at 13.) He contends that his original sentence was inherently interrelated and interconnected as part of a single sentencing package; accordingly, "his sentences must stand or fall together." *Id.* The Government agrees, noting that "[t]he nature of relief secured by a successful collateral challenge to a guilty plea [is] an opportunity to withdraw the plea and proceed to trial." *Padilla* v. Kentucky, 559 U.S. 356, 372–73 (2010).; *see also United States v. Mobley*, 833 F.3d 797, 801 (7th Cir. 2016) (noting sentencing "packages" should not be unbundled). Because the plea was globally negotiated, Taylor is permitted to withdraw his plea and the case shall proceed anew.

# IV.  CONCLUSION

Taylor presents two arguments in his § 2255 Motion for why his conviction and sentence are unlawful.  Both arguments are rooted in his claim that his plea is invalid because he entered it without the benefit of effective assistance by his trial counsel.  The Court has previously determined that Taylor's § 2255 Motion is **DENIED** as to trial attorney's failure to file a motion to suppress evidence obtained in two searches of his residence.  However, the § 2255 Motion must be **GRANTED** as to his second claim.  The extensive fact-finding process regarding the second claim has revealed a simple case.  The Government charged Taylor with three counts of sexual exploitation of a child based on videos that did not fall within the exploitation statute.  Lacking experience and preparation in federal court criminal proceedings, Taylor's attorney advised him to plead guilty to all of the charges pending against him.  Taylor accepted that advice, without ever learning that the evidence was deficient.  To deny relief to defendants in Taylor's position would generate dark incentives for prosecutors to threaten no-holds-barred prosecution on even untenable charges.  The Government asserts that it does not advocate for a ruling "that an attorney can advise a client to plead guilty to a charge the client did not commit." (Filing No. 96 at 30.)  But that is precisely what Banks did.  The record shows that trial counsel's representation fell below objective standards of professional reasonableness when he advised Taylor to plead guilty to Counts 9 through 11 and Taylor was prejudiced because he would not have pled guilty to those charges but for trial counsel's errors.  Because Taylor pled guilty without effective assistance from counsel, his motion for relief pursuant to § 2255 is **GRANTED**.

The parties agree that the proper relief is vacatur of Taylor's guilty plea and sentence. Therefore, Taylor's guilty plea and sentence in Case No. 1:15-cr-00165-TWP-DKL-1 are **VACATED**.  The **Clerk is directed to reopen** Case No. 1:15-cr-00165-TWP-DKL-1.

Within **seven days** counsel for Taylor shall file a notice indicating whether they will remain as trial counsel or whether indigent counsel is appropriate.

Once counsel is determined, an initial hearing/pretrial conference before the Magistrate Judge will be scheduled in the criminal case.

The **Clerk is directed** to docket a copy of this Entry in the criminal action, Case No. 1:15-cr-00165-TWP-DKL-1.

The **Clerk is further directed** to update the docket in the criminal entry to reflect that the § 2255 Motion has been resolved.

**SO ORDERED.**

Date: 2/28/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Brandon Sample
BRANDON SAMPLE PLC
brandon@brandonsample.com

Jeremy Brian Gordon
LAW OFFICE OF JEREMY GORDON
jeremy@gordondefense.com

Zachary Lee Newland
JEREMY GORDON, PLLC
zach@brandonsample.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov

Brian L. Reitz
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brian.reitz@usdoj.gov

Bradley Paul Shepard
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brad.shepard@usdoj.gov

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov

James J. Bell
PAGANELLI LAW GROUP LLC
james@paganelligroup.com

Jonathan A. Bont
PAGANELLI LAW GROUP
jon@paganelligroup.com